Alise M. Johnson
Florida Bar No. 0003270
Email: johnsonali@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6385

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Securities and Exchange Commission,<br><br>Plaintiff,<br><br>v.<br><br>Jason P. Wootten; Ronald Frank Stevenson; Family Tree Estate Planning, LLC; and American Financial Security, LLC,<br><br>Defendants. | No. CV-21-<br><br>COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF WITH DEMAND FOR JURY TRIAL |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## INTRODUCTION

1. From approximately October 2016 through February 2020, Defendants Jason P. Wootten ("Wootten") and his company Family Tree Estate Planning, LLC

("Family Tree") acted as unregistered brokers on behalf of investment funds ("EquiAlt Funds") managed by EquiAlt, LLC ("EquiAlt"). They raised at least $32 million from the unregistered offer and sale of securities of the EquiAlt Funds to more than 300 retail investors most of whom are located in Arizona. From these sales, these Defendants received approximately $3.7 million in transaction-based sales commissions.

2. From approximately February 2016 through January 2020, Defendants Ronald Frank Stevenson ("Stevenson") and his company American Financial Security, LLC ("AFS") also acted as unregistered brokers on behalf of the EquiAlt Funds. They raised at least $19 million from the unregistered offer and sale of securities in the EquiAlt Funds to more than 250 retail investors located in Arizona and California. From these sales, these Defendants received approximately $1.7 million in transaction-based sales commissions.

3. At all relevant times, the Defendants were not registered as broker-dealers with the Commission or associated with a registered broker-dealer. EquiAlt's securities offerings were not registered with the Commission and there was no applicable exemption from registration for these offerings.

4. By engaging in this conduct, the Defendants each violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), [15 U.S.C. §§ 77e(a) and 77e(c)], and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. § 78o(a)(1)]. Unless enjoined, the Defendants are reasonably likely to continue to violate the federal securities laws. The Commission also seeks against all Defendants disgorgement of ill-gotten gains along with prejudgment interest thereon, and civil money penalties.

## DEFENDANTS

5. **Jason P. Wootten,** 36, is a resident of Scottdale, Arizona. During the relevant period, Wootten operated and controlled Family Tree. Wootten is not

currently registered with the Commission or the Financial Industry Regulatory Authority ("FINRA"), nor was he during the time period relevant to the allegations contained herein.

6. **Ronald Frank Stevenson**, 61, is a resident of Prescott, Arizona. During the relevant period, Stevenson operated and controlled AFS. Stevenson is not currently registered with the Commission or the Financial Industry Regulatory Authority ("FINRA"), nor was he during the time period relevant to the allegations contained herein. Stevenson is also the owner of American Financial Investments, LLC ("AFI"), an investment adviser registered with the state of Arizona.

7. **Family Tree Estate Planning, LLC** is an Arizona limited liability company located in Phoenix, Arizona. During the relevant period, Wootten owned and controlled Family Tree, and treated it as his alter ego. Family Tree has never been registered with the Commission, FINRA or any state securities regulatory authority.

8. **American Financial Security, LLC** is an Arizona limited liability company located in Prescott, Arizona. During the relevant period, Stevenson owned and controlled AFS and treated it as his alter ego. AFS has never been registered with the Commission, FINRA or any state securities regulatory authority.

## JURISDICTION

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)]; and Sections 21(d), 21(e) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

10. This Court has personal jurisdiction over the Defendants and venue is proper in the District of Arizona because Defendants transacted business in this District relating to the sale of the EquiAlt Funds. The Individual Defendants also reside within the District.

11. In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## FACTUAL ALLEGATIONS

12. From at least 2016 through February 11, 2020 (when the Commission filed an emergency action against EquiAlt and others, *SEC v. Davison, et. al*, Case no 8:20-cv-00325 (M.D. Fla.), EquiAlt orchestrated a massive Ponzi scheme relating to its management of the EquiAlt Funds. The scheme involved at least 1,100 investors who invested approximately $170 million in the EquiAlt Funds.

**A. The EquiAlt Ponzi Scheme and Other Fraudulent Conduct**

13. At all relevant times, Brian Davison controlled EquiAlt, whose primary business purpose was the management of the EquiAlt Funds. Davison, along with EquiAlt's Vice President Barry Rybicki, told investors that the EquiAlt Funds would use their money to purchase real estate in distressed markets throughout the United States and that these real estate investments would generate revenues sufficient to pay investors interest rates of 8% to 10% per annum on their investments. The EquiAlt Funds, however, were unprofitable almost from inception.

14. Without sufficient revenues to pay the money owed to investors, EquiAlt soon resorted to fraud, using new investor money to pay the interest promised to existing investors. EquiAlt perpetuated this fraud for several years until the Commission filed its emergency action in February 2020 and the Court entered a temporary restraining order, an asset freeze, and appointed a receiver over the EquiAlt Funds.

15. In furtherance of this fraudulent scheme, EquiAlt, Rybicki, and Davison also made numerous material misrepresentations and omissions to investors in connection with the offer and sale of investments in the EquiAlt Funds.

### B. EquiAlt Funds and Material Misrepresentations to Investors

16. EquiAlt, through a network of unregistered sale agents including the Defendants in this action, sold investors 3-year or 4-year term debentures issued by the EquiAlt Funds providing a fixed annual return of 8% to 10%. Many of the investors were elderly, retired, and used their IRAs to invest in the EquiAlt Funds. Moreover, many of the investors were unaccredited or unsophisticated in that they lacked knowledge or expertise in financial or business matters, were not capable of evaluating the merits or risks of the investment, and were not otherwise capable of bearing the economic risks of the investment. Many of the investors in this Ponzi scheme were attracted to investments in the EquiAlt Funds by representations that the investments were secure, safe, low risk, and conservative.

17. In addition to the material misrepresentations about the safety and security of investing in the EquiAlt Funds, EquiAlt made numerous other material misrepresentations and omissions concerning the use of investor proceeds, registration with the Commission, compliance with applicable laws, and management of the EquiAlt Funds. In particular, EquiAlt misrepresented, or failed to disclose adequately to investors, that their investment proceeds were being used to pay substantial commissions to unregistered sales agents. Moreover, investors were told that 90% of their funds would be used to invest "in property." Yet, less than 50% of investor funds were actually used for that purpose. In fact, most of the remaining funds were used for improper purposes such as the payment of millions of dollars in undisclosed fees and bonuses to EquiAlt, Davison and Rybicki.

### C. Defendants Offered and Sold EquiAlt Securities

18. Over a period of several years, EquiAlt recruited a network of unregistered sales agents throughout the United States to sell the fixed rate debentures issued by the EquiAlt Funds. These debentures are securities within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the

Exchange Act. EquiAlt paid these unregistered sales agents, including the Defendants, commissions ranging from 6-12% of the amount invested in the EquiAlt Funds.

### a. **Wootten's Unregistered Offering of EquiAlt Securities**

19. Wootten first met Rybicki in 2016. After several meetings with Rybicki, Family Tree entered an agreement with Rybicki's company, BR Support Services, LLC ("BR Support Services") to sell EquiAlt Funds' securities in return for the payment of commissions of 8%. Rybicki had previously established BR Support Services for the express purpose of paying commissions to sales agents like Family Tree. Immediately after Family Tree signed the agreement with BR Support Services, Wootten began recommending investments in the EquiAlt Funds to Family Tree's clients, many of whom had been solicited through direct mail advertisements and seminars conducted by Family Tree. In many cases, Family Tree's clients had initially contacted Family Tree about the preparation of a living trust but were then offered investments in EquiAlt Funds.

20. For more than three years, Wootten regularly participated in multiple securities transactions involving the EquiAlt Funds at key points in the chain of distribution. More specifically, Wootten repeatedly solicited investors for EquiAlt's Funds; communicated directly with investors about EquiAlt's Funds; touted the merits of the EquiAlt Funds' securities to investors; reassured investors about the risk of investing in the Funds or of EquiAlt's business model; and received transaction-based compensation.

21. In fact, Wootten routinely gave advice to investors concerning the suitability of investments in the EquiAlt Funds, repeatedly describing the investments as safe. While pitching EquiAlt Funds' securities to prospective investors, Wootten also explained EquiAlt's business model as well as other important aspects of the investment, such as the annual interest rate and liquidity

6

features offered by the investment.  In connection with the offer of EquiAlt Funds' securities, Wootten undertook a financial analysis of a prospective investor's assets and would review the investor's investment objectives and risk tolerance.  Wootten frequently recommended investments in the EquiAlt Funds over annuities offered by Family Tree from large, reputable insurance companies.  Wootten was highly motivated to recommend investments in the EquiAlt Funds because Family Tree also collected an additional 6% commission when investors renewed their investments in the EquiAlt Funds.

22.   In addition to recommending investments in the EquiAlt Funds, Wootten also assisted investors with most aspects of the securities sales transactions. For example, Wootten provided EquiAlt Funds' offering documents and marketing materials to prospective investors and helped process the paperwork necessary to complete the investment such as the subscription agreements executed by investors. Wootten together with Rybicki also participated in numerous discussions with prospective investors about key aspects of the EquiAlt Funds investment.  Wootten even helped Family Tree's clients close existing retirement accounts so they could invest the proceeds in the EquiAlt Funds and also helped them establish self-directed IRA accounts at companies recommended by EquiAlt.

23.   Out of the $170 million that EquiAlt raised from investors, Defendants Wootten and Family Tree raised approximately $32 million from the unregistered offer and sale of the EquiAlt Funds' securities to more than 100 retail investors. Many of these investors were unaccredited, unsophisticated, and elderly people who invested through their IRA accounts. From these sales, these Defendants received approximately $3.7 million in transaction-based sales commissions.

b.   **Stevenson's Unregistered Offering of EquiAlt Securities**

24.   Similarly, Stevenson also engaged in sales activity indicative of a broker dealer, including: (1) soliciting new investors; (2) communicating directly

with investors by phone, by e-mail, or in person; (3) espousing the merits of the EquiAlt Funds to these investors; (4) reassuring investors about the "risk" of the investment or about the EquiAlt business model; and (5) receiving transaction-based compensation.

25.  For more than five years, Stevenson regularly participated in numerous transactions involving EquiAlt Funds' securities at key points in the chain of distribution. For example, Stevenson, through AFS, solicited prospective investors by advertising the investments offered by the EquiAlt Funds in the local newspaper and regularly provided these investors with EquiAlt Funds' written sales and marketing materials. Stevenson then personally recommended the investments to AFS and AFI's clients while discussing key aspects of the investments such as the business of the EquiAlt Funds, the management of the Funds, and the investment options offered by EquiAlt (which included a monthly interest payment option or a growth option offering a higher return on investment).

26.  Once an investor expressed an interest in the EquiAlt Funds, Stevenson would then review their investment objectives (including risk tolerance, the need for income, and investment time horizon) and provide the investors with copies of EquiAlt Funds' offering documents. Thereafter, Stevenson assisted with the sale of EquiAlt Funds' securities by processing all the paperwork necessary to complete the investment. Stevenson also occasionally participated in joint conference calls between prospective investors and EquiAlt's representatives to address any particular questions about the EquiAlt Funds' securities.

27.  Out of the $170 million that EquiAlt raised from investors, Defendants Stevenson and AFS raised approximately $19 million from the unregistered offer and sale of the EquiAlt Funds' securities to more than 100 retail investors. Many of these investors were unaccredited, unsophisticated, and elderly people who invested through their IRA accounts.

28. Although the Defendants purportedly offered the EquiAlt securities under a Rule 506(b) exemption to registration, the offering did not qualify as such because many of the investors were neither accredited nor sophisticated. Furthermore, the Defendants did not provide an audited balance sheet or financial statements to the unaccredited EquiAlt investors. Consequently, the Defendants engaged in unregistered securities transactions for which an exemption from registration did not apply.

29. Moreover, when the Defendants sold the EquiAlt Funds' securities they held no securities licenses, were not registered with the Commission as broker-dealers, and were not associated with a registered broker-dealer. From these sales, these Defendants received approximately $1.7 million in transaction-based sales commissions.

## CLAIMS FOR RELIEF
## COUNT I
## Violations of Sections 5(a) and 5(c) of the Securities Act

30. The Commission repeats and realleges paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities offered and sold by the Defendants as described in this Complaint and no exemption from registration existed with respect to these securities.

32. From at least 2016 and continuing through approximately February 2020, Defendants, directly and indirectly:

   (a) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or

        otherwise;

    (b)    carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

    (c)    made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security;

without a registration statement having been filed or being in effect with the Commission as to such securities.

33. By reason of the foregoing Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Violations of Section 15(a)(1) of the Exchange Act

34. The Commission repeats and realleges Paragraphs 1 through 29 of this Complaint as if fully set forth herein.

35. From at least 2016 and continuing through approximately February 2020, Defendants, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while they were not registered with the Commission as a broker or dealer or when they were not associated with an entity registered with the Commission as a broker-dealer.

36. By reason of the foregoing, Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A.

### Permanent Injunctive Relief

Issue a Permanent Injunction enjoining Defendants from violating Sections 5(a) and 5(c) of the Securities Act and Section 15(a)(1) of the Exchange Act.

### B.

### Disgorgement and Prejudgment Interest

Issue an Order directing Defendants Wootten and Family Tree to disgorge on a joint and several basis all ill-gotten gains or proceeds received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.  Issue a separate Order directing Defendants Stevenson and AFS to disgorge on a joint and several basis all ill-gotten gains or proceeds received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

### C.

### Civil Money Penalties

Issue an Order directing Defendants Wootten and Family Tree to pay civil money penalties on a joint and several basis pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.  Issue a separate Order directing Defendants Stevenson and AFS to also pay civil money penalties on a joint and several basis pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

### D.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

E.

**Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

F.

**Demand For Jury Trial**

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

DATED this 22 day of March, 2021.

*s/Alise Johnson*
Attorney for Plaintiff
Securities and Exchange Commission